MAUSLEY E. JONES v. H. E. CASSTEVENS ET AL.

(Filed 16 December, 1942.)

**1. Contracts § 8—**

It is permissible for the parties to agree, at the time of the execution of a note, that it shall be paid only in a certain manner, i.e., out of a particular fund, by foreclosure of collateral, or collection of rents, etc. *Holding* valid a written stipulation in a note that, in case of default and sale of the security, the makers should not be liable for any deficiency, and that the deficiency judgment statute has no application to the facts of this case.

**2. Same—**

If the words employed in a contract are capable of more than one meaning, the meaning to be given is that which it is apparent the parties intended them to have, and such intent is to be gathered from the entire instrument, so that context, subject matter, and surrounding circumstances may affect the meaning of words used.

**3. Evidence § 40: Contracts § 22—**

In proper cases it may be shown by parol evidence that an obligation was to be assumed only upon a certain contingency, or that payment should be made out of a particular fund or otherwise discharged in a certain way, or that specific credits should be allowed.

APPEAL by plaintiff from *Grady, Emergency Judge,* at June Term, 1942, of GUILFORD.

Civil action to recover on promissory note.

On 1 February, 1940, the plaintiff sold the defendants his one-half interest in the jewelry business of Glenn & Jones, Inc., including 13

shares of stock in the company, for $2,250.00. The sum of $250.00 was to be paid on 1 July, 1940, and the balance on or before 1 February, 1942. The defendant executed his note under seal for the amount secured by second deed of trust on a house and lot in the city of Greensboro.

Following the attestation clause and above the defendants' signature, there appears in the note this provision: "If default in payment is made and the premises securing by deed of trust this note is foreclosed, and if the property when sold should not wholly satisfy any part of this note, it is understood that the makers of this note will not be liable for any deficiency judgment."

The initial payment of $250.00 was made on 1 July, 1940. Thereafter the encumbered premises were sold under foreclosure of the first deed of trust, and brought no more than enough to pay the indebtedness secured thereby.

From judgment on the pleadings denying recovery, the plaintiff appeals, assigning error.

*Herbert S. Falk for plaintiff, appellant.*
*Frazier & Frazier for defendants, appellees.*

STACY, C. J. Was it the intention of the parties that in case of a sale of the encumbered premises under foreclosure, either of the first or second deed of trust, payment of the defendants' note should be made exclusively out of funds derived from such foreclosure? The trial court answered in the affirmative, and we approve.

There are four principal reasons inducing the conclusion:

First. It is axiomatic in the law of contracts that "as a man consents to bind himself, so shall he be bound." Elliott on Contracts (Vol. 3), sec. 1891; *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356. Here, upon the face of the note it is stipulated that the defendants are "not to be liable for any deficiency judgment." That is to say, in case of default and sale of the property under foreclosure, if it fail to bring enough to satisfy in whole any part (either the first or second installment) of the note held by the plaintiff, the defendants are not to be sued for any deficiency. The stipulation was inserted with a view to a possible foreclosure and the attendant sacrifice or loss of defendants' house and lot, in which event, the defendants were to be relieved of any further liability on the note in suit. Such is the agreement.

Second. It is permissible for the parties to agree at the time of the execution of a note, that it shall be paid only in a certain manner, *i.e.,* out of a particular fund, by the foreclosure of collateral, or the collection of rents, etc. *Wilson v. Allsbrook,* 203 N. C., 498, 166 S. E., 313, and cases there assembled. The stipulation in the instant note is, that in

case of default and a sale of the collateral security under foreclosure, the makers are to be relieved from any deficiency liability.

While this provision is in writing—having been inserted in the note— it is the holding with us that "parol evidence is admissible to show an agreed mode of payment and discharge other than that specified in the bond." Brown on Parol Evidence, 117; *Bank v. Winslow,* 193 N. C., 470, 137 S. E., 320; *Typewriter Co. v. Hardware Co.,* 143 N. C., 97, 55 S. E., 417.

In *Evans v. Freeman,* 142 N. C., 61, 54 S. E., 847, the alleged agreement was, that the note "should be paid out of the proceeds of the sale of the stock-feeder." The Court held that this part of the agreement, though resting in parol, could be shown as it did not conflict with what had been written. To like effect is the holding in *Bank v. Winslow,* 193 N. C., 470, 137 S. E., 320, where the alleged agreement was, that the note "was to be paid from the sale of peanuts then in the possession of the payee." See, also, *Wilson v. Allsbrook, supra,* where the alleged agreement was, that the note "was to be paid from rents collected by the defendant." Speaking to the subject in *Kindler v. Trust Co.,* 204 N. C., 198, 167 S. E., 811, it was said: "In proper cases it may be shown by parol evidence that an obligation was to be assumed only upon a certain contingency, or that payment should be made out of a particular fund or otherwise discharged in a certain way, or that specified credits should be allowed."

Third. When a written instrument is presented for construction, the question for decision is, What did the parties intend by their agreement? *Lewis v. May,* 173 N. C., 100, 91 S. E., 691. If there be no dispute as to the terms, and they are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written. *Potato Co. v. Jenette,* 172 N. C., 1, 89 S. E., 791; *Patton v. Lumber Co.,* 179 N. C., 103, 101 S. E., 613; *Cole v. Fibre Co.,* 200 N. C., 484, 157 S. E., 857; *Whitley v. Arenson,* 219 N. C., 121, 12 S. E. (2d), 906. "If the words employed are capable of more than one meaning, the meaning to be given is that which it is apparent the parties intended them to have." *King v. Davis,* 190 N. C., 737, 130 S. E., 707.

The law is stated with accuracy and clarity by *Hoke, J.,* in *Simmons v. Groom,* 167 N. C., 271, 83 S. E., 471, as follows: "In *R. R. v. R. R.,* 147 N. C., 382, in speaking to certain rules of interpretation applicable to these written contracts which are sufficiently ambiguous to permit of construction, the Court said: 'It is well recognized that the object of all rules of interpretation is to arrive at the intention of the parties as expressed in the contract, and that in written contracts which permit of construction this intent is to be gathered from a perusal of the entire instrument.' In Paige on Contracts, sec. 1112, we find it stated: 'Since the object of construction is to ascertain the intent of the parties, the

contract must be considered as an entirety. The problem is not what the separate parts mean, but what the contract means when considered as a whole.' And while in arriving at this intent words are *prima facie* to be given their ordinary meaning, this rule does not obtain when the 'context or admissible evidence shows that another meaning was intended.' Paige, sec. 1105. And further, in section 1106, it is said that the context and subject-matter may affect the meaning of the words of a contract, especially if in connection with the subject-matter the ordinary meaning of the term would give an absurd result. Again, as said by *Woods, J.,* in *Merriam v. United States,* 107 U. S., 441, 'In such contracts it is a fundamental rule of construction that the courts may look to not only the language employed, but to the subject-matter and surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made.' And in Beach on Modern Law Contracts, sec. 702, the author says: 'To ascertain the intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects they had in view. The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have.' "

Fourth. The statute pertaining to deficiency judgments, ch. 36, Public Laws 1933, has no application to the facts of the present record. *Brown v. Kirkpatrick,* 217 N. C., 486, 8 S. E. (2d), 601. The rights of the parties are to be determined by the stipulation appearing on the face of the note.

The correct result seems to have been reached in the court below.

Affirmed.